NOT FOR PUBLICATION

<mark>RECEIVED
MAY 3 0 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK</mark>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALISON KOWALESKI, *on behalf of herself and all others similarly situated*,

    Plaintiff(s),

v.

RMB, INC. and JOHN DOES 1–25,

    Defendant(s).

Civ. No. 18-4149

**OPINION**

THOMPSON, U.S.D.J.

### INTRODUCTION

    This matter comes before the Court on a motion to dismiss brought by Defendant RMB, Inc. ("Defendant"). (ECF No. 5.) Plaintiff Alison Kowaleski ("Plaintiff") opposes. (ECF Nos. 9, 10.) The Court has decided the Motion after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant's Motion is granted.

### BACKGROUND

    This consumer debt collection action arises out of the following allegations. Plaintiff is a natural person and resident of Somerset County, New Jersey (Compl. ¶ 6, ECF No. 1), who received a letter or notice from Defendant concerning a debt owed to Raritan Bay Medical Center, and who brings this lawsuit on behalf of a putative class of all New Jersey consumers who were sent similar debt collection letters or notices (*id.* ¶¶ 11–12). Defendant is a corporation which maintains a location at 409 Bearden Park Circle, Knoxville, TN. (*Id.* ¶ 7.)

1

On or about June 21, 2017, Plaintiff allegedly incurred a financial obligation to Raritan Bay Medical Center. (*Id.* ¶ 15.) On or about November 9, 2017, Raritan Bay Medical Center referred this obligation to Defendant for the purpose of collection. (*Id.* ¶ 21.) At that time, the obligation was past due and in default. (*Id.* ¶¶ 22–23.) In connection with this obligation, Defendant sent and Plaintiff received a letter dated November 9, 2017 seeking a balance of around $150. (*Id.* ¶¶ 24–25; *see also* Compl., Ex. A ("Collection Notice"), ECF No. 1.) This letter was the first communication Plaintiff received regarding this alleged debt. (Compl. ¶ 27.)

At the top right corner of the November 9, 2017 letter, incorporated by reference in Plaintiff's Complaint and attached thereto as Exhibit A, Defendant provided the following information regarding the Raritan Bay Medical Center obligation:

> **Responsible Party:** Alison Kowaleski
> **Patient Name:** ALISON B KOWALESKI
> **Total of Accounts Listed Below:** $177.37
> **Date:** 11/09/17

(*See* Collection Notice; *see also* Compl. ¶ 29.)[1] The November 9, 2017 letter—entitled "COLLECTION NOTICE"—also included the following bolded text:

> **This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**
>
> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy**

---

[1] The Court reproduced the text as it appears on the Collection Notice attached as Exhibit A to Plaintiff's Complaint, also reproduced verbatim in Defendant's Brief in support of its Motion to Dismiss (*see* Def.'s Br. at 1, ECF No. 5-1), and not as it appears in the Complaint itself. The Complaint appears to include two transcription errors: (1) the Responsible Party in the Complaint is written as "Alison Kowalwski," and (2) the Patient Name as written in the Complaint is "ALISON KOWALESKI" (omitting the middle initial "B"). (*Compare* Compl. ¶ 29, *with* Collection Notice.)

2

> of a judgment and mail you a copy of such judgment or
> verification.

(*See* Compl. ¶ 30; *see also* Collection Notice.) The document also listed the "Creditor" as "Raritan Bay Medical Center," giving a service date, reference numbers, and the amount due of $177.37. (*See* Collection Notice.)

Plaintiff filed her proposed class action Complaint on March 23, 2018, bringing one Count alleging violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(g). Broadly, Plaintiff asserts that "[t]he November 9, 2017 letter overshadows and/or contradicts the protections provided by 15 U.S.C. § 1692g(a)(3)," and further, "would cause [the least sophisticated consumer] to be confused about what rights he or she had and how to exercise those rights." (Compl. ¶¶ 32–33, 39–44.) In particular, Plaintiff argues that Defendant's use of the phrase "Responsible Party" would lead the least sophisticated consumer to believe that the debt described was already validated. (*Id.* ¶¶ 46–47.)

After receiving an automatic extension of time to respond (ECF No. 4), Defendants filed the instant Motion to Dismiss on April 27, 2018. (ECF No. 5.) On May 7, 2018, Plaintiff submitted a letter pursuant to Local Civil Rule 7.1(d)(5), adjourning the Motion by one cycle to June 4, 2018. (ECF No. 7.) Plaintiff timely filed opposition on May 21, 2018. (ECF Nos. 9, 10.) Defendant replied on May 25, 2018. (ECF No. 11.) The Court now considers the Motion.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take

note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court may consider "matters incorporated by reference or integral to the claims, matters of which the Court may take judicial notice, matters of public record, orders, and other items of record in the case." *Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL 6803081, at *4 (D.N.J. Nov. 16, 2016).

## ANALYSIS

Congress enacted the FDCPA to eliminate abusive, deceptive, or unfair debt collection practices. Section 1692g of the FDCPA outlines the required written disclosures that a debt collector must provide within five (5) days of the initial communication sent to a consumer debtor, or within the initial communication itself. This section requires the following written disclosures:

4

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This set of disclosures includes what is colloquially referred to as the validation notice. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353–54 (3d Cir. 2000) ("Paragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so."), *as amended* (Sept. 7, 2000).

The validation notice provisions were specifically designed to "guarantee that consumers would receive adequate notice of their rights under the law." *Id.* at 354. A debt collector must do more to comply with Section 1692g than simply include the statutory validation notice in the initial debt collection letter—the notice must be "conveyed effectively" to the least sophisticated debtor. *Id.* A debt collector violates the FDCPA when a validation notice is "overshadowed or contradicted" by other portions of the communication. *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013); *see also Wilson*, 225 F.3d at 354; *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991). However, even the least sophisticated debtor "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read

5

with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations." *Caprio*, 709 F.3d at 149.

Plaintiff here alleges that the phrase "Responsible Party" in the header of the Collection Notice overshadows and/or contradicts the otherwise prominent, central, and bold paragraph providing the statutorily required validation notice on the same, single-page letter. (Compl. ¶¶ 46–47.) Plaintiff suggests that, to the least sophisticated debtor, the word "responsible" may suggest legally operative language indicating that the debt is already considered valid and therefore this term effectively undermines or contradicts the debtor's understanding of her statutory right to contest the debt. (*See* Pl.'s Br. in Opp'n at 5–8, ECF No. 9.) Further, Plaintiff argues that the phrase "Responsible Party" not only creates uncertainty but, given its placement as the first thing a debtor may read on the page, overshadows the thorough validation notice included squarely in the middle of the letter in bold text. (*See* Pl.'s Br. in Opp'n at 8–11.)

Under Third Circuit law, courts analyze debt collection letters for both "form" and "substance" to determine whether other components of the letter overshadow or contradict the letter's validation notice. *See, e.g., Wilson*, 225 F.3d at 356–61. Here, Plaintiff's argument absolves the least sophisticated debtor of their required "quotient of reasonableness, [] basic level of understanding, and [] willingness to read with care . . . ." *Caprio*, 709 F.3d at 149. Much like the Third Circuit's analysis in *Wilson*, the Court finds the "Responsible Party" designation is not objectionable based on both the form and the substance of the letter.

First considering form, the language with which Plaintiff takes issue appears in the top right corner of the notice, lateral to the address blocks. It appears above the main, centered, and boxed title "COLLECTION NOTICE," suggesting this information is not a substantive notice of rights but rather a summary of points, like a memorandum header. The "Responsible Party" line

6

is accompanied by three other lines of basic information: Patient Name, Total of Accounts Listed Below (*i.e.* amount owed), and Date; this placement suggests that "Responsible Party" is intended as an identifier, not a legal conclusion being directed at the debtor that implicates her right to dispute her alleged debt. Even from the perspective of the least sophisticated debtor, the placement of this text is not confusing; further, the fact that it is bold is not dispositive given that the other accompanying lines conveying the patient name, amount owed, and date are also bolded, as is the paragraph-long validation notice which appears in the main body of the single-page collection notice. *Reizner v. Nat'l Recoveries, Inc.*, 2018 WL 2045992, at *6–10 (D.N.J. May 2, 2018) (holding the collection letter's validation notice was not overshadowed by other language in the letter given the position of the validation notice language in the letter and the fact that it was in bold typeface); *see also Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243, 260 (E.D. Pa. 2015) ("[N]either the demand nor the letter's main text contains the kind of 'screaming' headlines, blunt imperatives, and copious use of capital letters and exclamation points used by letters other courts have found to be violative of § 1692g." (footnote and citation omitted)), *on reconsideration in part*, 2015 WL 12834385 (E.D. Pa. Aug. 13, 2015); (*see also* Def.'s Reply at 5, ECF No. 11.)

Turning to substance, it stretches the Third Circuit's least sophisticated debtor standard beyond its plain meaning to assume that the least sophisticated debtor would ascribe a specific legal meaning to the otherwise innocuous header line item "Responsible Party."[2] Here, the

---

[2] This problem of terminology, and when words are used with their precise legal meanings, often exists in FDCPA cases. *See, e.g., Graziano*, 950 F.2d at 111 n.5 ("In using the term 'debtor' here and elsewhere in this opinion, we do not mean to imply a legal conclusion that Graziano was responsible for the debts that Harrison attempted to collect. The Act, rather than using the term 'debtor,' describes an individual in Graziano's position as a 'consumer;' perhaps, therefore, a more appropriate phrase in this instance would be, 'least sophisticated consumer.' By using the phrase 'least sophisticated debtor,' however, we follow the usage in the reported case law.")

phrase "Responsible Party" is not used in a descriptive narrative or directly juxtaposed to the validation notice in a manner that might confuse a lay debtor. *Cf. Graziano*, 950 F.2d at 111 (finding validation notice giving 30-day window was overshadowed or contradicted by a demand for payment within ten days and a threat of immediate legal action if payment were not made in that time). Rather, the "Responsible Party" header is a simple statement of identification indicating that the collector believes the named recipient of the notice is the obligated debtor. Similar statements of identification have routinely been found unobjectionable. *See Weber v. Computer Credit, Inc.*, 259 F.R.D. 33, 39–40 (E.D.N.Y. 2009) (finding statement "[o]ur records indicate that this debt is your responsibility" did not overshadow or contradict validation notice, as it merely conveyed the payment owed in "simple, straightforward language"); *see also, e.g., Wilson*, 225 F.3d at 353 (finding language "Our client has placed your account with us for immediate collection. We shall afford you the opportunity to pay this bill immediately and avoid further action against you." in the first two paragraphs did not overshadow or contradict the validation notice such that the least sophisticated debtor would be confused or misled as to the right to dispute or seek validation of the debt); *see also, e.g., Caprio*, 709 F.3d at 145 (not commenting on statement "Our client's records show you as the person responsible for payment of the charges," but finding other wording which suggested the consumer could dispute the debt by phone contravened the FDCPA).

The "Responsible Party" designation makes no demand or threat, neither creates a timetable that differs from the statutory prescription nor proposes an inappropriate method of disputing the debt, and does not obscure the relevant warnings with erroneous narrative text that muddies the validation notice; as such, the Court does not hesitate to find that these words, as displayed on RMB's notice, are not misleading or contradictory. As required under the FDCPA,

8

the validation notice created a clear and obvious disclaimer, and the "Responsible Party" header cannot fairly be said to create uncertainty about even the least sophisticated debtor's rights.

Plaintiff appears to attempt to amend her Complaint in her opposition brief to Defendant's Motion to Dismiss, noting for the first time a purported violation of 15 U.S.C. § 1692e(10). (*See* Pl.'s Br. in Opp'n at 8–11.) It is axiomatic that a plaintiff cannot amend its pleading in an opposition brief on a motion to dismiss. *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Section 1692e is not cited anywhere in Plaintiff's Complaint, and Plaintiff's inclusion of the phrase "Section 1692 *et seq.*" cannot be fairly read to put Defendant on notice of an alleged violation of § 1692e(10). Further, leave to amend in order to plead this statutory section would be futile, as "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." *Caprio*, 709 F.3d at 155 (citation omitted); *see also, e.g.*, *Reizner*, 2018 WL 2045992, at *5; *Cruz v. Fin. Recoveries*, 2016 WL 3545322, at *4 (D.N.J. June 28, 2016).

## CONCLUSION

For the reasons stated herein, Defendant's Motion is granted. An appropriate order will follow.

Date: 5/30/18

ANNE E. THOMPSON, U.S.D.J.

9